ANSTEAD, Judge,
specially concurring.
I concur in the majority’s opinion and write separately only to note my agreement with the analysis and conclusion of the trial court in its order on summary judgment, which states:
This case presents a significant issue of first impression, in the State of Florida, that relates to the legal duty of the Defendants vis-a-vis Plaintiffs Decedent, WILLIAM GREGORY GATH.
GATH was tragically killed as a result of a collision with a fire truck responding to a false alarm at Defendant, HOWARD JOHNSON HOTEL. The uncontroverted material facts show that on the date of the incident Defendant, EAGERTON PLUMBING was conducting repair work at Defendant, HOWARD JOHNSON HOTEL. The hotel, it should be so noted was in operation at the time and guests were residents there.
EAGERTON was replacing pipes at the hotel. In order to replace the pipe it was necessary to cut through sheet rock. This, in turn, could trigger dust which would result in activation of the alarm system. EAGERTON could not turn off or deactivate the system in part, i.e., where work was being conducted. EAGERTON, therefore, elected to tape and bag the sensors where work was being conducted. This was in order to prevent false alarms and to ensure that the system was functional in the rest of the hotel.
In spite of these precautions at or about 2:17 p.m. on the 24th of January, 1987 the alarm was activated at the site where EA-GERTON was engaged in repair work. This set in motion a chain of events that culminated in the tragic death of Mr. Gath.
Mr. Clark, Defendant EAGERTON’s foreman, heard the alarms and checked the work area. He found no evidence of fire and proceeded to the front office of HOWARD JOHNSON. When he arrived at the office one engine company was on the scene. These events took place in five to ten minutes. Fire department personnel then conducted an inspection of the premises and determined there was no fire at the hotel. (See deposition of Thomas Clark and David Tiffany).
The record evidence conclusively established that the ST. LUCIE COUNTY FIRE DEPARTMENT dispatched apparatus to the scene pursuant to an alarm sent by Defendant GUARDIAN SYSTEM. The record also conclusively establishes that once this alarm was received, the fire department made all decisions as to manner and method of response. The record is also clear that any decision to classify an alarm as false rested with the fire department personnel. The record further demonstrates that the department in its sole discretion decided which apparatus would respond, the route chosen, the method of response and all other matters. It is also beyond contradiction that a recall order could only be issued by the ranking officer in charge. It should also be noted that this tragedy occurred while emergency vehicles under the control of the department were responding to the scene.
Finally, the uncontradicted facts show that Defendant GUARDIAN was under both a contractual and legal obligation to promptly report any alarm to the Department. GUARDIAN personnel on the date *140 and tíme in question did receive the alarm and contacted hotel front desk personnel. HOWARD JOHNSON employees were unable to determine if a lire was in progress. GUARDIAN, therefore, notified the ST. LUCIE COUNTY FIRE DEPARTMENT.
An essential element of a cause of action in tort is the existence of a duty to a given Plaintiff. "Duty, in turn, becomes a question of law. As the Supreme Court recently noted courts must carefully distinguish between:
[T]he fact that the question of foreseeability can be relevant both to the element of duty (the existence of which is a question of law) and the element of proximate causation (the existence of which is a question of fact). McCain v. Florida Power Corp., 593 So.2d 500, 502 (Fla. 1992)
The Court, with regard to the duty (legal) issue, further noted:
The duty element of negligence focuses on whether the defendant’s conduct fore-seeably created a broader “zone of risk” that poses a general threat of harm to others. Id.
Thus Plaintiff is required, as Justice Ko-gan noted, to demonstrate “a minimal threshold legal requirement for opening the courthouse doors.” Id. This necessarily involves a legal evaluation of the foreseeable zone of risk that is engendered by a given Defendant’s actions.
The question of foreseeable zone of risk is, therefore, an objective one that is fraught with policy considerations. As the rightly revered Cardozo explained so long ago:
[T]he orbit of the danger as disclosed to the eye of reasonable vigilance would be the orbit of the duty.
or
The risk reasonably to be perceived defines the duty to be obeyed and risk imports relation; it is risk to another or to others within the range of apprehension. Palsgraf v. Long Island R.R. Co., 248 N.Y. 339, 162 N.E. 99 (1928).
The existence of a legal duty to a given Plaintiff is also inextricably intertwined with issues of public policy. As Judge Cobb noted in Firestone Tire & Rubber Co. v. Lippincott 383 So.2d 1181 (Fla. 5th DCA 1980):
One who seeks redress at law does not make out a cause of action by showing without more that there has been damage to his person. If the harm was not willful, he must show that the act as to him had possibilities of danger so many and apparent as to entitle him to be protected against the doing of it though the harm was unintended. Id. at 1182 N. 2 (emphasis supplied). See also [Williams v. Bumpass ] 568 So.2d 979 [ (Fla. 5th DCA 1990) ] ad [sic] [Webb v. Glades Elec. Co-op., Inc. ] 521 So.2d 258 [ (Fla. 2d DCA 1988) ].
Duty, as the Illinois Court of Appeal noted, is further
not dependent on the factor of foreseeability alone but includes consideration of public policy and social requirements, and.... the question of duty is one which is heavily based upon public policy considerations. Duncan v. Rzonca, [133 Ill.App.3d 184, 88 Ill.Dec. 288], 478 N.E.2d [603] 608 (Ill.App. 2d Dist.1985). See also Johnson Estate v. Condell Mem. Hosp. [119 Ill.2d 496, 117 Ill.Dec. 47], 520 N.E .2d 37 (Ill.1988).
Foreseeability, in this sense, becomes as the McCain Court noted an
exercise [of] prudent foresight whenever others may be injured as a result. This requirement of reasonable general foresight is the core of the duty element. 593 So.2d at 503 (emphasis supplied).
Thus reasonable specific foreseeability of a general zone of risk to a given Plaintiff is an objective test that necessarily involves Public policy considerations. It is a test that recognizes that more is required than the mere general risk of injury that is concomitant to all human activity. From this conceptual framework the Court must examine the reasonable zone of risk arising from the activities of each of the Defendants now moving for Summary Judgment.

*141
A.

DEFENDANT HOWARD JOHNSON

It is alleged that HOWARD JOHNSON failed to maintain the fire alarm and smoke detectors in a reasonably safe manner. Specifically Plaintiff maintains that HOWARD JOHNSON should have disconnected the entire system for the duration of the repair process. This, it should be noted, in a hotel that was open and housing guests.
HOWARD JOHNSON, it is maintained, should have foreseen that the repair work would discharge the alarm system, that GUARDIAN ALARM SYSTEM would contact the fire department, that the fire department would dispatch emergency vehicles, that one of the vehicles would be operated negligently, and that finally an accident would ensue. In this writer’s view these eventualities were not within Cardozo’s “orbit of danger” for the activity of repair undertaken by HOWARD JOHNSON.
. Public policy must also be considered. HOWARD JOHNSON, an innkeeper, had a non-delegable duty to its guests. Can it be seriously maintained that turning off the alarm system was a viable, reasonable option? The question answers itself. The magnitude of that immediate, apparent and very real zone of risk must also be placed in the equation leading to judgment. Public Policy must not, in this writer’s view, encourage a potential catastrophe by finding that the safety of guests is outweighed by the regrettable but remote consequences that occurred in this case.

B.

EAGERTON PLUMBING

Much the same analysis should be applied to the actions of this Defendant. EAGERTON, faced with .the same immediate, apparent and potentially catastrophic danger to hotel guests chose not to disconnect the system. Rather they tried to minimize false alarms by masking the system in the vicinity of ongoing repair work. The only reasonably foreseeable zone of risk, in the Court’s view, was to occupants of the motel and not to Mr. Gath.

C.

GUARDIAN ALARM SYSTEMS

It is alleged that Defendant GUARDIAN ALARM SYSTEMS breached its duty to the Plaintiffs decedent by failure to determine if the alarm was, in fact false. As a result the Defendant should have foreseen:
(1) a false alarm would summon the fire department, and,
(2) that the fire truck would be operated negligently, and,
(3) that an accident would occur.
In this writer’s view, the orbit of reasonable risk to this Defendant was the possibility of deadly conflagration at an occupied hotel. To delay, on these facts, summoning would be a breach of its contractual and legal duty. That could have resulted in an even greater tragedy. The risk and therefore foreseeable zone of risk extended to those guests and not to the remote prospect of a negligently operated fire truck.
By way of analogy this writer is reminded of the maxim:
Because of a nail the shoe was lost.
Because of the shoe the horse was lost.
Because of the horse the man was lost.
Because of the man the battle was lost.
Because of the battle the war was lost.
To follow Plaintiffs argument would subject the hapless blacksmith to liability for the fall of a nation.
All Defendants presently moving for Summary Judgment fall within the Illinois Supreme Court’s succinct observation:
[I]t was reasonable for Condell [Howard Johnson — Eagerton—Guardian] to consider that the police [fire department] if they pursued (responded) .would do so in a safe manner Johnson Estate v. Condell [119 Ill.2d 496, 117 Ill.Dec. 47, 53], 520 N.E.2d [37] 43.
*142 (See also Ford v. Peaches Entertainment, [83 N.C.App. 155] 349 S.E.2d 82 (N.C.App. 1986).
Based on the foregoing the Defendants’ Motions for Summary Judgment are GRANTED.